**Affirmed and Memorandum Opinion filed September 18, 2025.**



In The

# Fifteenth Court of Appeals

_____

## NO. 15-24-00058-CV

_____

**ENGIE IR HOLDINGS LLC AND HAMLIN COLLEGIATE INDEPENDENT SCHOOL DISTRICT, Appellants**

**V.**

**KELLY HANCOCK, ACTING TEXAS COMPTROLLER OF PUBLIC ACCOUNTS, Appellee**

**On Appeal from the 39th District Court**
**Stonewall County, Texas**
**Trial Court Cause No. 4764**

## MEMORANDUM OPINION

In this appeal involving the now-expired Texas Economic Development Act, we consider whether ENGIE IR Holdings LLC and Hamlin Collegiate Independent School District cleared the sovereign immunity bar by pleading ultra vires claims against the Comptroller relating to the withdrawal of a certificate of limitation. We conclude and hold that Appellants did not meet that burden for two reasons. First,

the certificate was invalidated by its own terms before its purported withdrawal. Second, the withdrawal occurred after Appellants executed an unapproved and invalid value limitation agreement. We affirm.

# BACKGROUND

## A. The Texas Economic Development Act

The Legislature enacted the Texas Economic Development Act in 2001 to help attract manufacturing and other capital-intensive industries to Texas.[1] Contained in chapter 313 of the Tax Code, the Act authorized school districts to offer "businesses willing to make eligible investments within the districts' boundaries" a tax incentive in the form of a ten-year appraised value limitation for maintenance and operation taxes.[2] The Legislature extended the program several times before it expired on December 31, 2022.[3]

The process for obtaining a value limitation agreement was "heavily structured," as one commentator put it.[4] In general, it began when a taxpayer submitted an application to a school district, which would then forward the application, if it chose to consider it, to the Comptroller.[5] After notifying the parties that the application was complete, the Comptroller then had 90 days to perform an eligibility and economic impact analysis and either issue a certificate of limitation

---

[1]     *See* Act of May 24, 2001, 77th Leg., R.S., ch. 1505, § 1, sec. 313.003, 2001 Tex. Gen. Laws 5362, 5363; *see also* TEX. TAX CODE § 313.003.

[2]     *In re Stetson Renewables Holdings, LLC*, 658 S.W.3d 292, 294 (Tex. 2022); *see* TEX. TAX CODE § 313.027.

[3]     *See* TEX TAX CODE §§ 313.007, 313.171 (savings provisions). Unless otherwise noted, citations to the Act will be to the version in effect before its expiration.

[4]     David Sewell, *Tax Code Chapter 313 – Value Limitation Agreements*, STATE BAR OF TEX. 39TH ANNUAL ADVANCED OIL, GAS & ENERGY RES. 23-III (Sept. 30–Oct. 1, 2021).

[5]     *See* TEX. TAX CODE §§ 313.025(a), (a-1), (b); 34 TEX. ADMIN. CODE § 9.1054(b), (c).

or explain why no certificate would issue.[6] If the Comptroller issued a certificate, the school district would then submit a draft agreement to the Comptroller, who had 20 business days to review the agreement and notify the school district whether it complied with the law and was consistent with the application that was submitted to the Comptroller.[7] If the Comptroller approved the agreement, the school district would then vote to approve the application, make certain findings, and execute the agreement.[8]

## B.     The attempt to implement the Act

On May 25, 2022, ENGIE Solar NA LLC submitted an application to the School District for an appraised value limitation agreement under chapter 313. In exchange for limits on its property taxes, ENGIE Solar proposed to build a "solar powered electric generating facility" within the School District's boundaries in Stonewall County at a cost of approximately $520 million. The application named "Engie Solar NA LLC" as the "applicant" and identified its "Texas Taxpayer I.D. number of entity subject to Tax Code, Chapter 171" as "32071688603." The School District voted to accept the application and, on May 31, submitted it to the Comptroller.[9] Between August 1 and 10, ENGIE Solar sent the Comptroller one amendment and two supplements to the application. On August 12, the Comptroller notified the School District that the application was complete and that it would decide within 90 days whether to issue a certificate of limitation.

The Comptroller issued a certificate of limitation on November 4, within the

---

[6]     *See* TEX. TAX CODE §§ 313.025(d), (h), 313.026; 34 TEX. ADMIN. CODE § 9.1055(b), (c), (d).

[7]     *See* TEX. TAX CODE § 313.027(d)–(f); 34 TEX. ADMIN. CODE § 9.1055(e).

[8]     *See* TEX. TAX CODE § 313.025(d-1)–(f); 34 TEX. ADMIN. CODE §§ 9.1054(f), (g), 9.1060.

[9]     Kelly Hancock was automatically substituted as a defendant when his predecessor, Glenn Hegar, ceased to hold office. *See* TEX. R. APP. P. 7.2(a). "Comptroller" in this memorandum opinion refers generally to action by both the previous and current state officials.

3

90-day timeframe. In making the determinations required by subsections (h) and (d) of Tax Code § 313.025, the Comptroller expressly noted that it had done so based on the information contained in the application. One of those determinations was that the "Applicant is subject to [the] tax imposed by Chapter 171."[10] The Comptroller also warned that his "review of the application assumes the accuracy and completeness of the statements in the application," and that the certificate "is no longer valid if the application is modified, the information presented in the application changes, or the limitation agreement does not conform to the application." Finally, the Comptroller advised that the certificate was contingent on the school district approving and executing a value limitation agreement by December 31, 2022, the date the Act expired.

On November 13, the School District sent a proposed, unexecuted draft value limitation agreement to the Comptroller for his "office's review and approval." The agreement contained numerous recitals, many with blank spaces for relevant dates to be inserted; defined "Applicant" to mean "Engie Solar NA LLC (*Texas Taxpayer ID #32071688603*)"; and had a signature page where ENGIE Solar's vice president could execute the agreement on behalf of "ENGIE SOLAR NA LLC." The Comptroller acknowledged receipt the following day, thus triggering his obligation to review the agreement and to notify the School District of his findings within twenty business days.

On November 30, within twenty business days, a representative with the Comptroller's office notified the parties that "[t]he Franchise Tax for the applicant Engie Solar NA LLC is showing NOT ESTABLISHED. I cannot issue an Agreement Letter until the applicant is Active." The email included what appeared

---

[10] Chapter 171 imposes a franchise tax on taxable entities that do business, or that are charted or organized, in Texas. *See* TEX. TAX CODE § 171.001(a).

4

to be a screenshot (perhaps from the Secretary of State's website) showing that, as of November 30, 2022, ENGIE Solar's "Right to Transact Business in Texas" was "NOT ESTABLISHED." As it turns out, although ENGIE Solar was a franchise taxpayer when the School District submitted the application to the Comptroller on May 31, ENGIE Solar's status had changed to "NOT ESTABLISHED" about three weeks later, on July 25. No one advised the Comptroller of this fact at any time before he sent the November 30 email.

The next day, John Villareal, the manager in the Comptroller's office responsible for overseeing the Act, received a phone call from "representatives of the [Appellants]." The record does not contain a transcript of the call, but we can gather from the briefing and the record that it explained that ENGIE Solar's taxpayer status had changed on July 25 (effective June 1, 2022) because ENGIE Solar merged into its affiliate Appellant ENGIE IR Holdings LLC—an entity that had been a Texas franchise taxpayer since 2018 (Taxpayer ID #32067881204)—but the parties "had inadvertently failed to update the Chapter 313 Application to replace ENGIE Solar's name and Texas Franchise Tax ID with those of its successor, ENGIE IR." Villareal told the representatives "that the applicant Engie Solar NA LLC was required to be 'active' with the Texas Secretary of State's office before the Project would qualify for the tax limitation under the TEDA and an Agreement Letter could be sent under 34 Texas Administrative Code 1, Rule § 9.1055(e)."

Although ENGIE IR "recognized" that the Comptroller's concerns with issuing what ENGIE IR referred to as an "agreement approval letter" had "merit," ENGIE IR decided against either (1) amending the application (to replace ENGIE Solar's name and taxpayer ID with ENGIE IR's) or (2) advising the Comptroller that the application only needed to be supplemented (to identify ENGIE Solar's "successor in interest"). ENGIE IR declined to amend because "historically" the Comptroller had "disallowed [amendment] after a certificate's issuance." And

5

ENGIE IR declined to advise the Comptroller that only a supplement was needed because, "with Chapter 313's expiration looming, it became apparent that [the Comptroller's office] was being bombarded with demands from all fronts," including court proceedings, and so "[t]o avoid adding to that burden," ENGIE IR "decided to forebear sending [the Comptroller a] written analysis at the time."

ENGIE IR and the School District instead agreed that nothing had to be done in response to the Comptroller's noncompliance notice because of "the legal and practical implications of the merger." They believed that because Engie IR had "stepped into [ENGIE Solar's] shoes on the date of the merger, thereby becoming the Applicant by operation of law and without any transfer or assignment," there "was no impediment to its signing the agreement as successor in interest to" ENGIE Solar. Appellants admittedly did not advise the Comptroller of their decision. Instead, they waited until what they thought was "the appropriate amount of time required by Rule 9.1055(e) for agreement review" before executing, on December 19, 2022, the same value limitation agreement that the Comptroller had not approved a few weeks earlier, but with one exception.[11] On the signature page, "ENGIE SOLAR NA LLC" was replaced with "ENGIE IR HOLDINGS LLC" and a parenthetical underneath that said, "As successor-in-interest to ENGIE Solar NA LLC."

The Act expired on December 31, 2022. On January 12, 2023, the School District sent the Comptroller a copy of the executed agreement. On January 26, the Comptroller notified ENGIE IR and the School District that the Comptroller was "withdrawing" the certificate of limitation because (1) "the agreement does not comply with Chapter 313," since ENGIE Solar "is not an entity subject to franchise tax imposed by Chapter 171," and (2) "the agreement was not submitted to our office

---

[11] The School District's Board also made the findings required by chapter 313.

6

for review before its approval and execution." On February 13, counsel for ENGIE IR sent a letter to the Comptroller detailing some of the facts we have recounted above, explaining that withdrawal was unwarranted because ENGIE IR effectively became the applicant when it merged with ENGIE Solar, and urging the Comptroller to rescind his January 26 letter. The Comptroller denied the request to rescind a few weeks later.

## C.     The litigation below

ENGIE IR and the School District sued the Comptroller for declarations that the Comptroller had no legal authority to withdraw the certificate of limitation, and thus acted ultra vires. They pleaded that the "minor clerical omission" in which they failed "to replace ENGIE Solar's name and Franchise Tax ID with those of ENGIE IR" had no effect on the certificate because ENGIE Solar had merged with ENGIE IR, who was, and had been, a Texas franchise taxpayer. Appellants alleged that the Comptroller's authority to withdraw the certificate had expired on December 14, 2022, because he did not amend or withdraw the certificate within the 20-business-day period under Rule 9.1055(e)(2), and that his authority certainly expired by December 31, 2022, when chapter 313 expired. Appellants also claimed the Comptroller acted ultra vires by denying them a contested-case hearing before the withdrawal decision became final.

ENGIE IR and the School District soon filed a traditional motion for partial summary judgment on their declaratory judgment claims. The Comptroller responded, but also filed a plea to the jurisdiction arguing that his sovereign immunity remained intact because Appellants had failed to allege a viable ultra vires claim. After a hearing on the summary judgment motion, the trial court granted the Comptroller's plea and expressly declined to rule on Appellants' motion for summary judgment. This appeal followed.

7

# DISCUSSION

ENGIE IR argues the trial court erred by granting the Comptroller's plea to the jurisdiction because ENGIE IR's pleadings established three separate ultra vires acts by the Comptroller: (1) withdrawing the certificate of limitation 48 days after the deadline in Rule 9.055(e) expired and 26 days after the Act terminated on December 31, 2022, (2) withdrawing the certificate even though ENGIE IR, the surviving entity in the ENGIE Solar/ENGIE IR merger, was subject to the tax imposed by chapter 171, and (3) depriving ENGIE IR of its statutory right to a contested case hearing. The School District's arguments largely overlap with ENGIE IR's.[12]

Appellants did not allege a valid ultra vires claim. The Comptroller's purported withdrawal of the certificate on January 26, 2023 was harmless due to two preceding and disqualifying events: (1) the certificate was invalidated by its own terms when ENGIE Solar's franchise taxpayer status changed and ENGIE IR stepped into its shoes via the merger, and (2) the value limitation agreement that Appellants executed on December 19 was invalid as a matter of law because the Comptroller notified Appellants that the agreement did not comply with one of chapter 313's fundamental requirements.

## I. Standard of Review

As one of six officers constituting the state's executive department,[13] the Comptroller is entitled to sovereign immunity.[14] Sovereign immunity from suit

---

[12] It contends that the Comptroller had no authority to withdraw the certificate in 2023, that the certificate's validity was unaffected by the merger between ENGIE IR and ENGIE Solar, and that the Comptroller is not immune from the claim for attorneys' fees.

[13] *See* TEX. CONST. art. IV, § 1.

[14] *See EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744, 749–50 (Tex. 2020).

defeats a trial court's subject-matter jurisdiction and is properly raised in a plea to the jurisdiction.[15] When, as here, a plea to the jurisdiction challenges the pleadings, we determine if the pleader alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case.[16] We construe the pleadings liberally in favor of the plaintiff while looking to the pleader's intent.[17] We review the trial court's order de novo.[18]

Appellants sought to invoke the ultra vires exception to sovereign immunity. "Plaintiffs who seek to bypass sovereign immunity using an ultra vires claim must plead, and ultimately prove, that the defendant government official acted without legal authority or failed to perform a ministerial duty."[19] Appellants alleged the former. "An officer acts without legal authority if he exceeds the bounds of his granted authority or if his acts conflict with the law itself."[20] But if "the actions alleged to be ultra vires were not truly outside the officer's authority or in conflict with the law, the plaintiff has not stated a valid ultra vires claim and therefore has not bypassed sovereign immunity.[21]

## II.  Ultra Vires

### A.    The certificate was invalidated

The Comptroller could not have acted ultra vires by withdrawing a certificate that was invalid. The certificate here conspicuously stated that it was "no longer valid" if "the information presented in the application changes":

---

[15]     *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004).

[16]     *Id.* at 226.

[17]     *Id.*

[18]     *Matzen v. McLane*, 659 S.W.3d 381, 388 (Tex. 2021).

[19]     *Id.*

[20]     *Id.*

[21]     *Id.*

9

> This certificate is no longer valid if the application is modified, the information presented in the application changes, or the limitation agreement does not conform to the application.

When the School District submitted the application to the Comptroller on May 31, 2022, it accurately identified ENGIE Solar's franchise taxpayer number as 32071688603. But on July 25, after the application's submission, ENGIE Solar's taxpayer status changed to "NOT ESTABLISHED," meaning ENGIE Solar no longer had taxpayer number 32071688603. That was a *change* in the information *presented* in the application—one that even ENGIE IR acknowledges in the timeline set out in its opening brief:

> July·25,·2022 → **ENGIE·Solar**'s·listing·on·franchise·taxpayer·database·changed·to·"NOT·ESTABLISHED"     CR1144

In an effort to avoid this unavoidable fact, Appellants direct us to Delaware and Texas corporate merger law and argue that the merger between ENGIE Solar and ENGIE IR did not change ENGIE Solar's status as a chapter 171 taxpayer "because ENGIE IR—through which ENGIE Solar's existence and operations continued—was a Texas franchise taxpayer and had been for years." In other words, it was of no consequence that ENGIE Solar changed from having taxpayer number 32071688603 to being "NOT ESTABLISHED" on July 25 because ENGIE IR and its valid taxpayer number stepped into ENGIE Solar's shoes and effectively became the applicant *before* then, on June 1. But even if we were to accept Appellants' contentions regarding Delaware and Texas merger law, that process would have resulted in its own change to the information presented in the application. ENGIE IR and the School District implicitly acknowledged this change in their original petition when they referred to their failure to "*replace* ENGIE Solar's name and

10

Franchise Tax ID with those of ENGIE IR."[22] If ENGIE Solar's name and taxpayer number should have been replaced or updated, then that means there had to have been a *different* name and number that would have been used to do the replacing or the updating. There was thus a change in the information presented in the application.

ENGIE IR contends that the Comptroller does not have "the power to cancel chapter 313 agreements retroactively for minor clerical errors that have no legal significance and do not affect the eligibility of the applicant or the project to receive the tax incentive." But the Comptroller did not cancel any agreement; it stated in its November 4 letter that the certificate is invalidated if the information contained in the application changes. ENGIE IR argues that "[n]othing in the statute or the rules allowed" the Comptroller to say or do so, but conditioning the validity of a certificate upon the information presented in the application as submitted corresponds with chapter 313's statutes and related administrative rules aimed at ensuring that only eligible properties and qualifying entities received the tax incentive.[23] That includes the Legislature's policy decision that an entity must be a chapter 171 taxpayer to receive the incentive—the very same provision that underlay the Comptroller's

---

[22] ENGIE IR repeats this in its brief when it says the parties "inadvertently failed to *update* the Chapter 313 Application to *replace* ENGIE Solar's Name and Texas Franchise Tax ID with those of its successor, ENGIE IR." (emphasis added).

[23] *See, e.g.*, Tex. Tax Code §§ 313.026(b) ("the comptroller's determination whether to issue a certificate … for property *described in the application*") (emphasis added), 313.026(c) (same), 313.031(a) (ordering Comptroller to "adopt rules and forms necessary for the implementation and administration of this chapter"); 34 Tex. Admin. Code §§ 9.1053(c) (permitting application changes upon request or prior approval of school district or comptroller), 9.1055(f) (addressing application changes after completion notice but before issuing certificate), 9.1058(a) (requiring recipient of incentive to notify the Comptroller "immediately" of any change in address or contact information and to include the entity's Texas franchise taxpayer number); Sewell, *Tax Code Chapter 313 – Value Limitation Agreements* ("Once the Comptroller has issued the certificate of limitation, the application may not be amended.").

November 30 notice that the proposed agreement could not be approved.[24] In addition, all parties were on notice back in 2010 that a certificate's validity depended upon the information contained in the application *as submitted*:

> The agency provides its economic analysis and recommendation based on the information submitted in the application and the agreement must include the information that is submitted in the application.… If the information considered by the agency in making its recommendation changes, the recommendation is no longer accurate.[25]

While claiming that no one is to blame for the "inadvertent mistake of not replacing ENGIE Solar with ENGIE IR on the application sooner," ENGIE IR simultaneously lays all of the blame at the Comptroller's feet, observing that this "entire mess" could have been prevented if the Comptroller had only "checked his taxpayer database before issuing the certificate on November 4." ENGIE IR has it backwards. The Comptroller's letter issuing the certificate on November 4 warned that it "assume[d] the accuracy and completeness of the statements in the application," and it repeatedly stated that the determinations therein were based on the information contained in the application. ENGIE IR was the one who knew, or should have known, of the June 1 merger, not the Comptroller, and yet ENGIE IR did not advise the Comptroller of that fact until approximately *6 months* later.

The Comptroller's purported withdrawal of the certificate of limitation on January 26, 2023, was harmless because the certificate was invalidated before that date.

---

[24]     *See* TEX. TAX CODE §§ 313.004(2)(C), 313.024(a).

[25]     35 TEX. REG. 5367, 5367 (2010) (to be codified at 34 TEX. ADMIN. CODE § 9.1055) (Tex. Comptroller of Public Accounts). The quotation refers to a "recommendation" because it was not until 2013 that the Legislature replaced the requirement that the Comptroller make a "recommendation" to the school district whether to approve an application with the requirement that the Comptroller "issue a certificate for a limitation on appraised value." *See* Act of May 26, 2013, 83rd Leg., R.S., ch. 1304, § 6, sec. 313.025(d), 2013 Tex. Gen. Laws 3317, 3322.

## B. The agreement was never valid

The Comptroller's purported withdrawal of the certificate on January 26 was harmless for a second reason: Appellants executed an unapproved, invalid value limitation agreement.

Rule 9.1055(e) states,

(e) Action after agreement review. No later than 20 business days after receiving an agreement for limitation on appraised value acceptable to an applicant, the comptroller:

(1) shall review the agreement for:

(A) compliance with Tax Code, Chapter 313, and this subchapter; and

(B) consistency with the application submitted to the comptroller and as amended or supplemented;

(2) may amend or withdraw the comptroller certificate for a limitation if the comptroller determines that the agreement as submitted by the applicant does not comply with Tax Code, Chapter 313 or this subchapter or that the agreement contains provisions that are not consistent with or represents information significantly different from that presented in the application as submitted to the comptroller; and

(3) provide written notification to the school district of the actions taken under this subsection.

34 TEX. TAX CODE § 9.055(e).

The requirement in subpart (e)(1) that the Comptroller review the proposed agreement for both compliance with chapter 313 and consistency with the application as submitted is meant to fulfill the Comptroller's express statutory obligation to *approve* the agreement *before* the parties execute it. *See* TEX. TAX CODE § 313.027(f)(7) (the agreement "must be in a form approved by the comptroller"). Indeed, if the Comptroller issues a certificate, then the school board "submits any negotiated agreement with the applicant *for the Comptroller's approval. If the Comptroller approves that agreement*," then the school board votes

13

on the application and grants the appraised-value limitation. *Green v. Tex. Comptroller of Pub. Accounts*, 697 S.W.3d 305, 309 (Tex. App.—El Paso 2023, pet. denied) (emphasis added).[26]

The Comptroller complied with his obligations under Rule 9.1055(e)(1) and (3) when one of his representatives timely notified the School District on November 30 that she could not issue an "Agreement Letter" because the "Franchise Tax for the applicant Engie Solar NA LLC is showing NOT ESTABLISHED." In other words, the Comptroller reviewed the proposed agreement but could not approve it because it did not comply with chapter 313's requirement (reflected in two separate provisions) that the tax incentive recipient be a chapter 171 taxpayer.[27] The Comptroller's non-approval is apparent on the face of the agreement later executed: all recitals in that agreement were completed except the one reserved for the date of Comptroller approval:

> **WHEREAS,** on _ ____ __, 2022, the Texas Comptroller's Office approved the form of this Agreement for a Limitation on Appraised Value of Property for School District Maintenance and Operations Taxes;

The Comptroller's non-approval means the draft agreement that ENGIE IR and the School District executed a few weeks later was invalid as a matter of chapter 313 law, rendering the Comptroller's purported withdrawal on January 26 harmless.

Although ENGIE IR seems to have acknowledged in its February 13 letter that it did not have Comptroller approval—"In early December, your office

---

[26]    *See* Sewell, *Tax Code Chapter 313 – Value Limitation Agreements* ("[O]nce an agreed form [of value limitation agreement] is reached, the form must be submitted to the Comptroller *for final approval*…. The Comptroller has twenty business days *to review and approve the proposed form of agreement. After the form of agreement has been approved*, the school district must have a meeting to" adopt findings, approve the application, and execute the agreement (emphasis added, citations omitted)).

[27]    *See* TEX. TAX CODE §§ 313.004(2)(C), 313.024(a).

14

expressed concerns with issuing an agreement *approval* letter ….”—ENGIE IR and the School District nonetheless declined to amend or supplement the application, and instead chose to execute the unapproved draft agreement because they thought they had “waited the appropriate amount of time required by Rule 9.1055(e) for agreement review.” ENGIE IR explains what was meant by that statement:

> If the Comptroller determined that the draft agreement submitted did not comply with Chapter 313 or was inconsistent with the application the Comptroller had certified, he could—“[n]o later than 20 business days after receiving an agreement”—“amend or withdraw the comptroller certificate,” *id.* § 9.1055(e)(2), forcing the school district and the applicant to resolve any defects before proceeding. *If after 20 business days, the Comptroller did not amend or withdraw the certificate, there were no further barriers in the Tax Code or the Administrative Code to a Chapter 313 agreement’s execution.* (emphasis added).

ENGIE IR and the School District thus construe Rule 9.1055(e) to mean that if the Comptroller *does not* amend or withdraw the certificate under subpart (e)(2) within the 20-business-day window, then the parties to a proposed value limitation agreement are free to execute the agreement. Applying that interpretation here, ENGIE IR explains that “[o]n December 19, 2022, ten days after his deadline to either amend or withdraw the Certificate if he thought it was warranted, the Comptroller still had not done so…. [B]ecause the Certificate was neither amended nor withdrawn, Appellants executed the Chapter 313 Agreement ….” But that is not what Rule 9.1055(e) says.

Whereas subpart (e)(1) of Rule 9.1055(e) provides that the Comptroller *shall* review a draft agreement for compliance with chapter 313 and consistency with the application, subpart (e)(2) says the Comptroller *may* amend or withdraw the certificate if he determines that the agreement does not comply with chapter 313 or that it is inconsistent with the application. The Comptroller thus has discretion whether to amend or withdraw a certificate when it does not comply with the law or

15

comport with the application.[28] When the Comptroller exercises his discretion not to amend or withdraw a certificate, that decision does not represent an implicit approval of the proposed agreement, especially when the Comptroller has timely notified the parties that the proposed agreement *does not* comply with chapter 313, as happened here. If it did, then that would render meaningless the Comptroller's notice of non-compliance and Tax Code § 313.027(f)(7) and Rule 9.0155(e)(1), which combine to require the Comptroller to review and approve only those agreements that are consistent with chapter 313 and the application as submitted.

Contrary to Appellants' reading of Rule 9.1055(e), they did not have the green light to execute the proposed agreement when the 20-business-day time limit expired without the Comptroller amending or withdrawing the certificate because the Comptroller never approved the agreement. If the Comptroller had done so, he would have sent a letter advising that the proposed agreement complied with chapter 313 and was consistent with the application as submitted. The notice the Comptroller sent on November 30 did the opposite. Having received notice that the proposed agreement did not comply with chapter 313, it was incumbent upon Appellants to remedy the defect, but they decided to forge ahead and execute the unapproved draft agreement based on a misreading of Rule 9.1055(e) (and § 313.027(f)(7)). None of this is changed by the application of Delaware and Texas merger law, which we again accept for purposes of addressing this issue, because the fact remains that the last communication the Comptroller had with the School District before the Act expired was that the proposed agreement could *not* be approved because it did not comply with chapter 313.

C.     **Section 313.025(h) is inapposite**

ENGIE IR additionally argues that the Comptroller, having "made what

---

[28]     *See Pedernal Energy, LLC v. Bruington Eng'g*, 536 S.W.3d 487, 492 (Tex. 2017) (explaining that "may" ordinarily connotes discretion).

amounted to a belated final determination that the project was ineligible for a limitation on appraised value," also acted ultra vires by withdrawing the certificate of limitation without affording Appellants the opportunity for a contested-case hearing under Tax Code § 313.025(h). We disagree for two reasons.

*First*, § 313.025(h) applies to the part of the process in which the Comptroller has 90 days to determine *whether* to issue certificate of limitation.[29] It does not apply to the Comptroller's 20-day review of a proposed value limitation agreement after the Comptroller has already determined that a property is eligible for a chapter 313 tax incentive. Thus, if on November 4, 2022, the Comptroller had notified Appellants that the property was ineligible for a chapter 313 tax incentive, then that would have triggered § 313.025(h)'s contested-case-hearing requirement. But that did not occur because the Comptroller did issue the certificate and later notified Appellants that it could not approve the agreement.

*Second*, ENGIE IR's argument that the Comptroller "withdrew the Certificate[] *after* the Chapter 133 Agreement had already been signed, *after* Chapter 313 had already terminated, and *after* any possibility existed of a contested case hearing" necessarily hinges upon a number of premises that are inaccurate in light of our holding that the Comptroller's purported withdrawal of the certificate was harmless, and thus legally irrelevant.

ENGIE IR contends that the trial court's judgment "leaves the Comptroller free to selectively ignore the expiration of his authority, putting at risk virtually every active Chapter 313 Agreement." In all fairness, we are troubled by the Comptroller's January 26 letter purporting to withdraw the certificate because he plainly has no statutory or other authority to turn back the clock and re-decide during a new 90-

---

[29] *See* TEX. TAX CODE §§ 313.025(d), (h), 313.026; 34 TEX. ADMIN. CODE § 9.1055(b), (c), (d).

and 20-day window that, respectively, a certificate of limitation should not issue or that a proposed value limitation agreement does not comply with chapter 313. But as we have explained, the Comptroller's January 26 letter was harmless for several reasons that are directly traceable to Appellants' pre-2023 actions, or lack thereof.

Because the Comptroller's purported withdrawal of the certificate of limitation was not outside of his authority or in conflict with the law, ENGIE IR and the School District failed to state a valid ultra vires claim based on the Comptroller's letter purporting to withdraw the certificate.[30] Appellants' pleadings did not raise a jurisdictional fact issue, but instead affirmatively negated the trial court's subject-matter jurisdiction. We overrule ENGIE IR's first and second issues and the School District's issue I.A and B.

## III. Appellants' Remaining Issues

ENGIE IR argues that we should grant Appellants' motion for partial summary judgment because the evidence conclusively showed that the Comptroller acted ultra vires, but we have concluded otherwise. The School District disagrees with the position taken by the Comptroller in his plea to the jurisdiction that he is immune from attorneys' fees, but we need not address that issue because the School District does not assert any argument that the trial court abused its discretion by failing to award it attorneys' fees under the Uniform Declaratory Judgments Act.[31] We overrule ENGIE IR's and the School District's remaining issues.

## CONCLUSION

The errors involved here appear to have been relatively insignificant, and the project might have benefitted local schools with relatively little harm to state or local

---

[30]    *See Matzen*, 659 S.W.3d at 388.

[31]    *See Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) ("The Declaratory Judgments Act does not require an award of attorney fees to the prevailing party.").

taxpayers. But that decision was not ours to make, and the Comptroller's office did only what they had warned ENGIE IR could happen if an application was not correct in every detail. Accordingly, having overruled ENGIE IR's and the School District's issues, we affirm the trial court's order granting the Comptroller's plea to the jurisdiction.

/s/ Scott A. Brister
Scott A. Brister
Chief Justice

Before Chief Justice Brister and Justices Field and Farris.